IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SAMARA NERO, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-00377-CAN |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying her claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision is **AFFIRMED**.

## BACKGROUND

### I.      PROCEDURAL HISTORY OF THE CASE

On October 29, 2018, Plaintiff Samara Nero ("Plaintiff") filed an application for Supplemental Security Income ("SSI") benefits [TR 23, 72]. Plaintiff alleges an onset of disability date of January 1, 2017 [TR 23, 72]. On February 1, 2019, her claim was initially denied [TR 23, 85], and again upon reconsideration on April 9, 2019 [TR 23, 101]. On April 22, 2019, [TR 118-121] Plaintiff requested an administrative hearing ("Hearing"), which was telephonically held before an Administrative Law Judge ("ALJ") on April 16, 2020 [TR 48-71]. At Hearing, the ALJ heard testimony from Plaintiff and a vocational expert ("VE") [TR 48-71]. On May 8, 2020, the ALJ issued an unfavorable decision [TR 20-40]. Plaintiff requested review of the ALJ's decision [TR 15-16]. The Appeals Council denied Plaintiff's request on August 26, 2020, making the decision of the ALJ the final decision of the Commissioner [TR 9-11]. Plaintiff requested an

extension of time to file a civil action [TR 5], which the Appeals Council granted on April 13, 2021, giving Plaintiff an additional thirty days to file [TR 1].  On May 16, 2021, Plaintiff filed the instant suit [Dkt. 1].  On October 26, 2021, the Administrative Record was received from the Social Security Administration [Dkt. 14].  On November 1, 2021, the Parties consented to proceed before a Magistrate Judge [Dkt. 15], and on that same day this case was referred to the undersigned [Dkt. 16].  Plaintiff filed her Opening Brief on February 16, 2022 [Dkt. 21], the Commissioner filed its Brief in Support of the Commissioner's Decision on April 15, 2022 [Dkt. 23], and Plaintiff filed her Reply Brief on April 17, 2022 [Dkt. 24].

## II.   STATEMENT OF FACTS

### Age, Education, and Work Experience

Plaintiff was born on May 2, 1986, making her thirty (30) years of age at the time of alleged onset of disability [TR 72].  Plaintiff's age classification at all relevant times was that of a "younger person… more limited in [her] ability to adjust to other work than persons who have not attained age 45."  *See* 20 C.F.R. § 404.1563(e).  Plaintiff completed high school [TR 39] but does not have any past relevant work experience that qualifies as substantial gainful activity [TR 39, 67].

### Relevant Medical Records

The ALJ found Plaintiff has the severe impairments of irritable bowel syndrome ("IBS"), and colitis with gastroesophageal reflux disease ("GERD"), arthritis, degenerative disc disease of the lumbar spine, obesity, depression, anxiety, and post-traumatic stress disorder ("PTSD") [TR 25].  Relevant to these conditions and the arguments raised by Plaintiff are the medical opinions and evaluations of Rebecca Pederson, APRN ("APRN Pederson") of Denton County MHMR and Dr. Marcelo Brito, M.D. ("Dr. Brito"), summarized as follows.

*APRN Pederson*

Plaintiff began treating at Denton County MHMR Center in 2019; she saw APRN Pederson.  On May 15, 2019, May 30, 2019, and on August 2, 2019, APRN Pederson evaluated Plaintiff, finding she had good concentration and attention span, good judgment and insight, and that her immediate, recent, and remote memory was intact [TR 895-896, 925-926].   More specifically, from review of the record, it appears Plaintiff first saw APRN Pederson on May 15, 2019 for a psychiatric evaluation [TR 934].  During this visit, Plaintiff did not present with reports of joint pain, edema, stiffness, muscle pain, or tenderness [TR 936].  Plaintiff's thought content was coherent and goal directed with no evidence of delusional or abnormal thought content or cognitive disturbance and she had a good fund of knowledge [TR 938].  She also reported that she had good concentration and attention span and her immediate, recent, and remote memory were intact [TR 938-939].  APRN Pederson saw Plaintiff two weeks later on May 30, 2019 and noted that Plaintiff was feeling better on Cymbalta and she had "less panic and anxiety" [TR 921].  She did not present with reports of joint pain, edema, stiffness, muscle pain, or tenderness [TR 922]. Plaintiff's thought content was again coherent and goal directed with no evidence of delusional or abnormal thought content or cognitive disturbance and she had a good fund of knowledge [TR 925].  She also reported that she had good concentration and attention span and her immediate, recent, and remote memory were intact [TR 925-926].  On August 2, 2019, APRN Pederson noted that Plaintiff is "feeling better but frustrated with life stress," and she had "less panic and anxiety" [TR 891].   She did not present with reports of joint pain, edema, stiffness, muscle pain, or tenderness [TR 893].  Plaintiff's thought content was coherent and goal directed with no evidence of delusional or abnormal thought content or cognitive disturbance and she had a good fund of

knowledge [TR 895].  She also reported that she had good concentration, attention span, and her immediate, recent, and remote memory were intact [TR 895-896].

After these three visits, on September 27, 2019, APRN Pederson completed a "Medical Assessment of Ability to do Work-Related Activities (Mental)" [TR 1469-1471].  APRN Pederson found that Plaintiff had no significant loss or ability to apply commonsense understanding to carry out simple on or two step instructions or apply commonsense understanding to carry out detailed but uninvolved written or oral instructions [TR 1469].  Plaintiff had extreme loss of ability to demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances [TR 1469].  Plaintiff has substantial loss of ability to perform the following: maintain concentration for an extended period, maintain attention/stay on task for an extended period, or perform at a consistent pace without an unreasonable number and length of rest period/breaks, act appropriately with the general public, make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, behave in an emotionally stable manner, respond appropriately to changes in a routine work setting, or finish a normal work week without interruption from psychologically based symptoms [TR 1469-1470].  APRN Pederson also found that Plaintiff had extreme loss of ability to cope with normal work stress (even those inherent in low stress jobs) without exacerbating pathologically based symptoms [TR 1470].  APRN Pederson also noted that Plaintiff had problems with concentration and focus [TR 1470].

### Dr. Brito

Plaintiff began seeing Dr. Brito in the year prior to her application date; the relevant notes from his visits are summarized as follows.  On July 25, 2018, Dr. Brito found that Plaintiff had

full range of motion with no swelling or deformity [TR 708].  He also noted that she had bowel sounds present, no hepatosplenomegaly, no masses palpable, no rebound tenderness, soft, mildly tender on the LUQ and left flank, nondistended [TR 708].  On August 8, 2018, Dr. Brito found reduced range of motion with no swelling or deformity but had tenderness of left paraspinal muscles [TR 704].  He also found normal bowel sounds, no hepatosplenomegaly, no masses palpable, no rebound tenderness, soft, nontender, nondistended [TR 704].  On August 21, 2018, Dr. Brito found that Plaintiff had reduced range of motion with no swelling or deformity but had tenderness of left paraspinal muscles [TR 701].  He also found normal bowel sounds, no hepatosplenomegaly, no masses palpable, no rebound tenderness, soft, nontender, nondistended [TR 700].  On September 11, 2018, Dr. Brito noted Plaintiff had full range of motion with no swelling or deformity [TR 698].  She had reduced bowl sounds, no hepatosplenomegaly, no masses palpable, no rebound tenderness, soft, nontender, nondistended [TR 698].  On September 18, 2018, Dr. Brito noted that Plaintiff had normal bowel sounds, no hepatosplenomegaly, no masses palpable, no rebound tenderness, soft, nontender, nondistended [TR 695].  He also noted Plaintiff had full range of motion with no swelling or deformity but had paraspinal tenderness on left side [TR 695].  On October 16, 2018, Dr. Brito noted that Plaintiff had normal bowel sounds, no hepatosplenomegaly, no masses palpable, no rebound tenderness, soft, nontender, nondistended [TR 691].  He further noted that Plaintiff had a reduced range of motion from her lumbar spine, but had full extension and flexion, with no swelling or deformity [TR 691].

Dr. Brito completed a "Medical Source Statement Re: Ability to do Work-Related Activities" on January 22, 2019 [TR 825-827].  Dr. Brito found that Plaintiff can lift and carry on an occasional basis ten pounds; Plaintiff can stand and walk for less than two hours, with normal breaks, during an eight-hour workday; Plaintiff can only sit for less than two hours a day, with

normal breaks; Plaintiff needs to alternate positions every ten to fifteen minutes; Plaintiff needs to lie down every two hours [TR 825-826].  Dr. Brito also found that Plaintiff has limited range of motion of lumbar spine, tenderness of midline of lumbar spine, radiculopathy, and abdominal tenderness of the upper abdomen [TR 827].

## III.   FINDINGS OF THE ALJ

### 1. Sequential Evaluation Process

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability.  20 C.F.R. §404.1520.  First, a claimant engaged in substantial gainful employment at the time of her disability claim remains not disabled.  § 404.1520(b).  Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience.  § 404.1520(c).  Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1.  § 404.1520(d).  Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered disabled if she can perform her past work based on her residual functional capacity. § 404.1520(e).  Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. § 404.1520(f).  Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates.  *Id*.

### 2. *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of the Plaintiff's case, the ALJ determined through the sequential evaluation process that the Plaintiff did not suffer from a disability [TR 20-40]. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 29, 2018, the application date [TR 25]. At step two, the ALJ found that Plaintiff has the severe impairments of irritable bowel syndrome ("IBS"), and colitis with gastroesophageal reflux disease ("GERD"), arthritis, degenerative disc disease of the lumbar spine, obesity, depression, anxiety, and post-traumatic stress disorder ("PTSD") [TR 25]. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) [TR 31-33]. At step four, the ALJ determined that Plaintiff maintains the following residual functional capacity:

> [T]he claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand or walk for two hours total in an eight-hour day or sit for six hours in an eight-hour day. The claimant would have to avoid ladders, ropes, scaffolds, or crawling. She could perform the other postural activities at the occasional level. Additionally, the claimant should avoid cold and heat extremes, wet and humid environments, fumes, odors, and dust. She should also avoid vibration, hazards, and hazardous machines. Applying the B criteria for the mental health issues and the four domains, the claimant A) can understand, remember, and carry out short and simple tasks and instructions; B) the claimant can have occasional contact with the public, co-workers, and supervisors; C) work activity should be routine and repetitive; D) the claimant can ask simple questions and or request assistance.

[TR 33-34]. Continuing the step four analysis, the ALJ determined that Plaintiff has no past relevant work [TR 39]. At the final step, step five, based on VE testimony, the ALJ determined that the claimant maintains the residual functional capacity to engage in work available in the national economy, specifically: Table worker, DOT #: 739.687-182, sedentary, SVP 2, 125, 000 jobs nationally; Patcher, DOT #: 723.687-010, sedentary, SVP 2, 65,000 jobs nationally; and

Bonder, semiconductor, DOT #: 726.685-066, sedentary, SVP 2, 168,000 jobs nationally [TR 40]. Based on this determination, the ALJ concluded Plaintiff was not disabled from October 29, 2018, the date the application was filed, through the date of the ALJ's decision, May 8, 2020 [TR 40].

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, No. 20-60856, 2021 WL 5563333, at *1 (5th Cir. Nov. 29, 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert denied, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). The ALJ resolves conflicts in the evidence; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though the Court will scrutinize the record to determine if evidence exists. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process. 20 C.F.R. §404.1520(a)(4).

# ANALYSIS

Plaintiff alleges in her Opening Brief that she is "disabled because her Lumbar and Bipolar impairments meet the Listings.  Further, her treating mental and physical health providers both provided opinions that her physical and mental functional limitations would not allow her to sustain any type of employment" [Dkt. 21 at 4].  In support of this position, Plaintiff raises three issues on appeal.[1]  First, Plaintiff argues that the ALJ committed reversible error by failing to consider work related functioning in the Paragraph "B" Criteria [Dkt. 21 at 8].  Second, the ALJ committed reversible legal error when failing to properly consider the medical source opinion evidence of record, specifically that of Dr. Brito, Plaintiff's spinal specialist [Dkt. 21 at 13].  And, lastly, the ALJ committed reversible error "by failing to forward a legally sufficient credibility assessment" [Dkt. 21 at 14].

## *Paragraph B Criteria*

"The claimant has the burden of proving that [his or her] impairment or combination of impairments meets or equals a listing." *Johnson v. Comm'r*, SSA, No. 4:21-cv-00118, 2022 WL 2919500, at *4 (N.D. Tex. June 27, 2022), (citing *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990), *superseded by statute on other grounds as stated in McCloskey v. Colvin*, No. CV 15-5223-SP, 2016 WL 5745077 at *7 (D. Cal. Sept. 30, 2016)), *report and recommendation adopted*, No. 4:21-cv-00118, 2022 WL 2918111 (N.D. Tex. July 25, 2022).  "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original).  An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria.  *Id.*  The court will find that substantial evidence supports the ALJ's finding at step three if the plaintiff fails to demonstrate the

---

[1] Plaintiff withdrew from consideration her further point of alleged error—whether the ALJ committed legal error in applying the "old" Listing to Plaintiff's lumbar impairment [Dkt. 24 at 2].

specified medical criteria.  *Selders v. Sullivan*, 914 F.2d 614, 619-20 (5th Cir. 1990).  At issue here are the "Paragraph B" criteria and the ALJ's evaluation thereof.  The Paragraph B criteria provide the functional criteria and a rating scale to evaluate how Plaintiff's mental disorders limit his or her functioning.  20 C.F.R. Part 404, Subpt. P, App. 1 §12.00 (E); s*ee id.* §§ 12.04(B), 12.06(B); 12.15(B).  Specifically, Paragraph B tasks the ALJ with deciding whether Plaintiff has one "extreme" limitation or two or more "marked" limitations of the four areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.

Plaintiff's chief argument is that the ALJ never addressed work-related functioning in any of the four areas, which necessitates remand.  More specifically, Plaintiff faults the ALJ for relying on record evidence regarding Plaintiff's non-work activities, such as caring for children, and household chores, and the observations of her providers in clinical settings.  Plaintiff argues that because the ALJ erred in failing to discuss her limitations in terms of work activities and/or work-related functioning there is a "clear lack of substantial evidence supporting [the ALJ's] findings" [Dkt. 21 at 9-10].  Plaintiff further asserts the evidence of record, most notably APRN Pederson of Denton County MHMR, makes clear Plaintiff suffered marked limitations in at least two domains and an extreme limitation in at least one domain [Dkt. 21 at 12].  In response, the Commissioner argues that a review of the ALJ's RFC assessment refutes Plaintiff's claim that the ALJ did not discuss work related functions in the four functional domains, further, the ALJ properly rejected the evidence that Plaintiff seeks to rely upon [Dkt. 24 at 8-10].

The Court begins with Plaintiff's arguments that the ALJ failed to properly discuss the four functional domains in his Paragraph B findings.  The Court finds Plaintiff's argument without merit. The ALJ's Decision reflects the following discussion of the Paragraph B criteria:

In understanding, remembering or applying information, the claimant has a moderate limitation. In her function report, the claimant noted difficulty with her memory and understanding. She also reported difficulty following written and spoken instructions and that she needs reminders to take her medication and go places. However, the claimant indicated that she cares for her three children, helping with homework, cooking, cleaning, and running errands. Ex. 6E. At appointments throughout the record, the claimant had an intact memory and a normal fund of knowledge. She had a good abstract ability and correctly identified similarities between objects. Additionally, the claimant had intact associations and no cognitive abnormalities. Exs. 6F/15, 28, 16F/12, 21F/7, 37, 50, 94, 48F/3. The claimant also reported that she cares for her children by herself during the day. Ex. 21F/29. Further, the claimant reported to her counselor that she was taking the necessary steps to enroll in college courses. Ex. 21F/1.

In interacting with others, the claimant has a moderate limitation. In her function report, the claimant indicated that she has difficulty getting along with others, as she is not social. She also denied spending time with others. Despite this report, the claimant further indicated that she gets along with authority figures and people and that she has never been fired from a job for not getting along with others. In addition, the claimant reported that she shops in stores. Ex. 6E. At some behavioral health appointments, the claimant reported agitation and isolating herself. She was also irritable. Ex. 21F/45, 93. Otherwise, the claimant was pleasant, calm, and cooperative throughout the record. Furthermore, she made good eye contact with her examiners. Exs. 1F/7, 12, 14, 3F/2, 4F/3, 5, 19, 21, 25, 29, 6F/5, 15, 25, 27, 9F/6, 9, 12, 16, 19, 21F/24, 93, 47F/ . The claimant's examiner also noted her having good interactions with her children. Ex. 21F/7.

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. In her function report, the claimant noted problems with her concentration, completing tasks, and following instructions. She also denied finishing what she starts. Despite this, the claimant reported that cares for her three young children, getting them up and off to school each day. She also reported shopping in stores, performing household chores like cleaning and laundry, running errands, driving, preparing meals, and handling her own personal care. Ex. 6E. At a behavioral health appointment, the claimant reported poor concentration and poor motivation. Ex. 6F/25. On examination, however, the claimant's attention and concentration were within normal limits throughout the record. Exs. 6F/15, 28, 21F/6, 36, 49, 48F/3. She also reported caring for her three children by herself during the day. Ex. 21F/29.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. In her function report, the claimant noted that she does not handle stress or changes in her routine well. Ex. 6E. The claimant also reported a history of panic attacks at a behavioral health appointment. Ex. 21F/45. Despite this, the claimant reported driving, handling her own personal care, preparing meals, shopping in stores, and doing household chores. In addition, the claimant indicated that she

cares for her three children by herself during the day, getting them up and off to school each day. Exs. 6E, 21F/29. Throughout the record, the claimant arrived to appointments promptly. Ex. 21F/20-22. She was dressed casually with appropriate hygiene. Exs. 6F/5, 15, 27, 21F/6, 22, 25, 36, 93. Moreover, the claimant had fair judgment and insight, along with independent decision-making skills. Exs. 3F/2, 6F/7, 16, 28, 16F/5, 20, 21F/37, 48, 94, 48F/3

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitations, the "paragraph B" criteria are not satisfied.

....

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand or walk for two hours total in an eight-hour day or sit for six hours in an eight-hour day. The claimant would have to avoid ladders, ropes, scaffolds, or crawling. She could perform the other postural activities at the occasional level. Additionally, the claimant should avoid cold and heat extremes, wet and humid environments, fumes, odors, and dust. She should also avoid vibration, hazards, and hazardous machines. Applying the B criteria for the mental health issues and the four domains, the claimant A) can understand, remember, and carry out short and simple tasks and instructions; B) the claimant can have occasional contact with the public, co-workers, and supervisors; C) work activity should be routine and repetitive; D) the claimant can ask simple questions and or request assistance.

[TR 32-34]. "While the ultimate goal of the special technique is to assess the degree of work-related limitations, nothing in the regulations forbids the ALJ to consider evidence of the claimant's functioning in non-work settings." *Fairbank v. Kijakazi*, No. 21-C-088, 2022 WL 4091930, at *13 (E.D. Wis. June 24, 2022); *see* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(3)(a) ("We use all of the relevant medical and non-medical evidence in your case record to evaluate your mental disorder: the symptoms and signs of your disorder, the reported limitations in your

activities, and any help and support you receive that is necessary for you to function."); *id*. §
12.00(F)(3)(b) ("Information about your daily functioning can help us understand whether your
mental disorder limits one or more of these areas; and, if so, whether it also affects your ability to
function in a work setting."); *id*. § 12.00(F)(3)(c) ("If you have difficulty using an area of mental
functioning from day-to-day at home or in your community, you may also have difficulty using
that area to function in a work setting.").  Here, after extensively citing the record evidence, the
ALJ described how Plaintiff interacts with people including authority figures, how Plaintiff
understands and retains instructions, and how Plaintiff handles tasks and responsibilities.  The ALJ
went on to state that the RFC reflects the degree of limitation found in the Paragraph B analysis,
explaining how Plaintiff's mental abilities in each of the four functional domains impacted her
ability to perform work activity.

To the extent Plaintiff argues that the ALJ erred in failing to find marked or extreme
limitations in his Paragraph B findings due to a failure to properly consider APRN Pederson's
opinions, the Court disagrees.  Plaintiff seems to argue that the opinion of APRN Pederson makes
clear she meets a listing [Dkt. 21 at 9, 11, 12].  In her Reply she avers that "the ALJ completely
ignored the opinions in the discussion of the 'B criteria,' and consequently the Defendant's
argument violates circuit case law" [Dkt. 24 at 4].  She further argues that APRN Pederson's
opinion is supported by her mental health provider's findings; however, she fails to point out where
this evidence is found in the over 1,500-page record.

The ALJ's assessment of APRN Pederson's opinion follows the updated rule for assessing
medical opinion evidence.  *See* 20 C.F.R. § 404.1520c.  The old rule required the ALJ to give a
treating physician's opinion "controlling weight" in the absence of specific mitigating factors, and
to "always give good reasons" in the determination for the weight given to a treating physician's

opinion.  § 404.1527(c)(2).  The new rule eliminates the "controlling weight" given to treating physicians.  § 404.1520c(a).  The new rule, 20 C.F.R. § 404.1520c, provides that the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the [claimant's] medical sources."  § 404.1520c(a).[2]  A medical opinion is a statement about what functional limits a claimant may have from an impairment.  § 404.1513(a)(2).  Rather, the ALJ shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements.  § 404.1520c(a), (c)(1)-(5).  However, supportability and consistency are the most important factors.  *See* §§ 404.1520(b)(2), 404.1520c(a).  Supportability means the degree to which objective medical evidence supports the medical opinion at issue, and consistency looks to the consistency between different medical opinions across the record.  § 404.1520c(c)(1)-(2).  Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record.  *See Cook v. Comm'r,* No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted,* No. 6:20-

---

[2] In transitioning to the new rule, the administration noted, "[t]he current policies that focus upon weight, including the treating source rule, have resulted in reviewing courts focusing more on whether we sufficiently articulated the weight we gave opinions rather than on whether substantial evidence supports the Commissioner's final decision." *Webster v. Comm'r,* No. 3:19-cv-97-DAS, 2020 WL 760395, at *3 (N.D. Miss. Feb. 14, 2020).  "In other words, the new rules are an attempt to eliminate confusion about a hierarchy of medical sources. . . . Reviewing courts, therefore, will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s)." *Id.*

cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).    "With respect to 'supportability,' 'the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase,'" and consistency is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)) (quoting *Vellone v. Saul*, No. 1:20-CV-00261-RAK-HP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021)).   There is limited case law concerning what constitutes a sufficient "explanation" of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2).   But, as described by one court, the standard is as follows:

> The measuring stick for an "adequate discussion" is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof.

*Id.* (citing *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620, at *6 (S.D. Miss. Sept. 15, 2021)).   "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson v. Comm'r*, No. 1:20-cv-166, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021) (quotation omitted), *report and recommendation adopted*, No. 1:20-cv-00166, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021).

The ALJ provided a thorough discussion of APRN Pederson's opinion:

> The undersigned fully considered the September 2019 opinion from Rebecca S. Pedersen, APRN, the claimant's psychiatric clinician. Ex. 31F. Ms. Pedersen opined that the claimant has only mild limitations in her ability to understand and carry out instructions and a marked limitation in her ability to demonstrate reliability by maintaining regular attendance and being punctual. Ms. Pedersen also opined that the claimant has a marked limitation in her ability to cope with normal work stress and that she will miss more than four days of work per month. The undersigned finds this opinion unpersuasive. Ms. Pedersen's treatment notes do not

support her opinion. At medication management appointments, the claimant reported an improvement in her symptoms and had generally normal mental status examinations. This opinion is also inconsistent with the record as a whole. At other appointments, the claimant had generally normal mental status examinations. Further, the claimant noted in her function report that she has difficulty understanding and with her memory. Furthermore and frankly more important with respect to this medical source statement, the assertions that claimant has mild, moderate or marked functional abilities do not address what the claimant can or cannot do over the course of a regular work day or what they are maximally capable of performing. Nurse Pederson a function by function assessment of ability or limitation. I find the "assessment" by Nurse Pedersen has very little persuasive value.

[TR 36-37]. The ALJ explicitly addresses the supportability and consistency factors of APRN Pederson's September 2019 opinion. Indeed, the ALJ pointed to other record evidence that contradicted APRN Pederson's findings. "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," and the Court "may not reweigh the evidence or substitute [its] judgment for that of the Commissioner." *Pulley v. Comm'r*, No. 4:21-cv-01159, 2022 WL 1694436, at *2 (N.D. Tex. May 13, 2022), *report and recommendation adopted*, No. 4:21-cv-01159, 2022 WL 1689445 (N.D. Tex. May 26, 2022). Here, APRN Pederson's opinion contained extreme limitations the ALJ found unpersuasive. Because the ALJ clearly explained why, the Court may not second guess him. *Johnson v. Kijakazi*, No. 4:21-cv-2192, 2022 WL 2193412, at *3 (S.D. Tex. June 17, 2022) ("The Commissioner has resolved the conflict. It is not my role to reweigh or second-guess that administrative decision.").

Moreover, to be clear, the ALJ's assessment of the Paragraph B criteria cites and tracks other medical evidence of record supportive of the ALJ's findings. On August 17, 2018, Dr. Obeng noted that Plaintiff was alert, good concentration, she was orientated to person, place, time, and situation, and she had intact memory recall [TR 640].[3] Dr. Augustine completed an

---

[3] To make the record complete, the regulations call for the development of the medical history of an SSI claimant for at least the 12 months preceding the month in which a plaintiff files his or her application. 20 C.F.R. § 416.912(b)(1).

Assessment on April 10, 2019, noting Plaintiff's behavior/motor activity was "normal/alert," she was "orientated to person, place, time and situation," she had "good" insight, her had "good/normal" memory, and her "reality orientation" was intact [TR 983].  On May 15, 2019, May 30, 2019, and on August 2, 2019, APRN Pederson evaluated that Plaintiff had good concentration and attention span, good judgment and insight, and that her immediate, recent, and remote memory was intact [TR 895-896, 925-926].  On August 13, 2019, Dr. Ray noted that Plaintiff reported lessened anxiety and stress, that Plaintiff was planning to enroll in college courses, that her medication is helping, and that she is able to care for her children [TR 890].  *See Johnson v Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (Conditions controlled or controllable by treatment are not disabling).  There are also numerous occasions of Plaintiff's positive interactions with medical providers documented throughout the record [TR 508, 513, 515, 548, 563,565, 585, 589].  In sum, the Court rejects Plaintiff's first point of error.

### Dr. Brito's Medical Source Statement

Plaintiff also contends that the ALJ erred in rejecting the opinion of Dr. Brito, Plaintiff's spinal specialist [Dkt. 21 at 14].  The Commissioner rejoins that the ALJ's analysis fully comports with the relevant guidelines and, in any event, the ALJ did not reject all of Dr. Brito's opinion, but rather properly explained why some of them were unpersuasive [Dkt. 23 at 12-13].

It is the ALJ who "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."  *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).  The Court must determine whether the record as a whole "yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ."  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *see Perez v. Barnhart*, 416 F.3d 457, 461 (5th Cir. 2005); *Jones v. Saul*, No. 4:20-CV-00772-BP, 2021 WL 2895867, at *4-5 (N.D. Tex. July 9, 2021) (finding no error where the

ALJ determined that [the treating physician's] opinion was inconsistent with the record as to the limitations he expressed).[4]  Here, the ALJ thoroughly explained, in compliance with the new regulations, why he found parts of Dr. Brito's medical source statement unpersuasive, expressly noting that Dr. Brito's own records did not support the extreme levels of restriction reported and that that the extreme nature of the restrictions espoused by Dr. Brito were inconsistent with the other diagnostic and clinical evidence of record:

> The undersigned fully considered the opinion from Marcelo Brito, M.D., the claimant's primary care provider. Ex. 15F. Dr. Brito opined that the claimant could lift and carry up to ten pounds, sit, stand, and walk less than two hours in an eight-hour day, needs to change positions every ten minutes, and lay down every two hours. The undersigned finds this opinion unpersuasive. Dr.Brito's own treatment notes do not support this opinion. While the claimant reported abdominal and lumbar pain, she had generally normal musculoskeletal and abdominal examination findings at primary care appointments throughout the record. Further, Dr. Brito's opinion is inconsistent with the record as a whole including generally mild imaging findings and conservative treatment history. Dr. Brito also opined that the claimant could occasionally stoop, crouch, climb stairs, kneel, and balance. He also opined that the claimant could never crawl or climb ladders and that she should avoid all exposure to extreme cold, heat, hazards, fumes, odors, dusts, gases, and poor ventilation. The undersigned finds this opinion persuasive, as Dr. Brito's treatment notes support it. This opinion is also consistent with the record as a whole. While the claimant had generally normal examination findings, she did have some instances of abdominal tenderness, lumbar tenderness, and straight leg raises tests. Therefore, the undersigned finds that the claimant can perform light work. She can stand or walk for two hours total in an eight-hour day or sit for six hours in an eight-hour day. The claimant would have to avoid ladders, ropes, scaffolds, or crawling. She could perform the other postural activities at the occasional level. Additionally, the claimant should avoid cold and heat extremes, wet and humid environments, fumes, odors, and dust. She should also avoid vibration, hazards, and hazardous machines.

---

[4] The ALJ "does not have 'to state the weight given to each symptom and diagnosis in the administrative record.'" *Mary C. R. v. Kijakazi*, No. 3:20-CV-00286-BT, 2021 WL 4476764, at *3 (N.D. Tex. Sept. 30, 2021) (quoting *Michelle K. M. v. Berryhill*, No. 3:17-cv-3044, 2019 WL 1243355, at *13 (N.D. Tex. Mar. 18, 2019)).  Failure to "mention a particular piece of evidence does not necessarily mean that [the ALJ] failed to consider it" when the ALJ "states explicitly that [she] considered the entire record" in the opinion.  *Id*. (quoting *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005)).

[TR 38].  Notably, the ALJ took care to discuss the supportability and consistency of Dr. Brito's MSS, contrasting the MSS against the remaining record evidence, pointing out that Plaintiff generally had normal musculoskeletal and abdominal examination and the record also showed generally mild imaging findings and conservative treatment records.   Moreover, as the Commissioner notes, the ALJ did not wholly reject Dr. Brito's opinion.  Rather, he found portions persuasive and portions unpersuasive.  Those portions found to be persuasive were incorporated into the RFC assessment.  Indeed, the ALJ found persuasive Dr. Brito's opinion that Plaintiff "could occasionally stoop, crouch, climb stairs, kneel, and balance," but "never crawl or climb ladders and that she should avoid all exposure to extreme cold, heat, hazards, fumes, odors, dusts, gases, and poor ventilation" [TR 38, 826-827].  Based on these findings, the ALJ found that Plaintiff could person some light work but limited her to "stand or walk for two hours total in an eight-hour day, sit for six hours in an eight-hour day" [TR 33-34].  Further, like Dr. Brito, the ALJ determined that she needed to avoid ladders, scaffolds, and crawling but "could perform the other postural activities at the occasional level" [TR 38, 826].  Lastly, like Dr. Brito, the ALJ found that Plaintiff "should avoid cold and heat extremes, wet and humid environments, fumes, odors, and dust," as well as, "vibration, hazards, and hazardous machines" [TR 33-34, 38, 827].  And while not recounted herein, the ALJ's Decision reflects further extensive discussion of the remaining medical opinions of record, including those of the SAMCs, which mirror other limitations ultimately stated in the RFC.

Once again, Plaintiff, essentially, is asking this Court to reweigh the evidence, which it cannot do.  *Reddin v. Saul*, No. 2:20-cv-908, 2022 WL 1816052, at *4 (W.D. La. May 4, 2022) ("A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the factfinder."), *report and recommendation adopted*, No.

2:20-cv-908, 2022 WL 1815830 (W.D. La. June 2, 2022); *Daily o/b/o T.S. v. Comm'r*, No. 4:20-cv-01347, 2022 WL 598524, at *2 (N.D. Tex. Feb. 9, 2022) ("The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present."), *report and recommendation adopted*, No. 4:20-cv-01347, 2022 WL 598237 (N.D. Tex. Feb. 28, 2022).  The ALJ's review of the evidence, in this cause, demonstrates substantial compliance with the applicable regulations, and Plaintiff has not shown that the ALJ erred in his review of the record.  Indeed, the ALJ took time to explain all of the evidence supporting and not supporting limitations and why he found evidence more or less persuasive—dedicating multiple pages in the decision to considering and analyzing the medical evidence of record—the ALJ did not ignore evidence or improperly reject medical opinions.  *See Liguez v. Kijakazi*, No. 4:20-cv-02798, 2021 WL 4943321, at *9 (S.D. Tex. Aug. 11, 2021) ("The ALJ discussed the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c."), *report and recommendation adopted*, No. 4:20-cv-2798, 2021 WL 4941997 (S.D. Tex. Oct. 22, 2021); *Julie A. v. Comm'r*, :20-cv-1237, 2022 WL 813901, at *11 (N.D.N.Y. Mar. 17, 2022) (affirming ALJ's decision where "ALJ's determination was supported by substantial evidence," in light of all of Plaintiff's medical records and testimony); *Tederrell G. v. Comm'r*, 5:20-cv-1129, 2022 WL 827787, at *13 (N.D.N.Y. Feb. 22, 2022) (affirming the  ALJ's decision where "the ALJ appropriately considered and reached an RFC based on the entire record[.]"), *report and recommendation adopted*, 5:20-cv-1129, 2022 WL 823664 (N.D.N.Y. Mar. 18, 2022).

***Plaintiff's Subjective Complaints/Symptoms***

Plaintiff's last point of error is that the ALJ "failed to properly outline [Plaintiff's] limitations from her symptoms and therefore was unable to address these limitations" [Dkt. 21 at

15].  Plaintiff elaborates that because the ALJ failed to properly identify Plaintiff's limitations from her symptoms, the ALJ was then unable to evaluate the intensity, persistence, and limiting effects of the symptoms on Plaintiff's ability to do basic work activities.  The Commissioner contends, to the contrary, that the ALJ fully considered Plaintiff's subjective complaints, addressed the inconsistencies between her complaints and the objective medical evidence, and took care to address Plaintiff's subjective complaints in the RFC [Dkt. 23 at 15].

Under the Social Security Regulations, the ALJ is required to follow a two-step process for evaluating a claimant's subjective complaints.  *See* 20 C.F.R. §§ 404.1429, 416.929; SSR 16-3P, 2017 WL 5180304, at *2-3 (S.S.A. Oct. 25, 2017).  First, the ALJ must consider whether the claimant had a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.  *See* SSR 16-3P, 2017 WL 5180304, at *3-4.  Once such an impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms to determine the extent to which they limit the individual's ability to do basic work activities.  *See id.* at *4-5.  The ALJ is to consider the entire record, including medical signs and laboratory findings, and statements by the claimant and his treating or examining sources concerning the alleged symptoms and their effect.  *See id.* at *5-7.  The ALJ must also consider a non-exclusive list of seven relevant factors in evaluating the intensity, persistence, and limiting effect's of a claimant's symptoms:

> 1. the claimant's daily activities;
> 2. the location, duration, frequency, and intensity of pain or other symptoms;
> 3. factors that precipitate and aggravate symptoms;
> 4. the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;
> 5. treatment, other than medication, for relief of pain or other symptoms;
> 6. measures other than treatment the claimant uses to relieve pain or other symptoms (e.g., lying flat on his or her back);
> 7. and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7-8; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).   Although the ALJ must give specific reasons for making this determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form.  It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered."  *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005).   Moreover, the Fifth Circuit has explicitly rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints.  *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994).  The ALJ's evaluation of the credibility of subjective complaints is entitled to judicial deference.  *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).  Courts have repeatedly noted that the ALJ is in the best position to assess a claimant's credibility because he "enjoys the benefit of perceiving first-hand the claimant at the hearing."  *Falco*, 27 F.3d at 164 n.18.

Here, the ALJ noted the proper standard and two-step analysis for evaluating subjective complaints/symptoms [TR 34].  The ALJ then outlined:

> When the claimant applied for disability benefits, she alleged the following disabling impairments: depression, anxiety, irritable bowel syndrome, arthritis, and chronic colitis. Ex. 2E/2. At the reconsideration level, the claimant reported worsening back pain making it difficult to walk; difficulty concentrating and panic attacks; and worsening IBS and stomach pain. Exs. 8E/2, 10E/2.

> At the hearing, the claimant testified to her functional limitations. The claimant testified to having back pain ongoing since 2018 that travels into her leg. The claimant testified that her doctor diagnosed her with arthritis in her back. The claimant testified that the injections she received for her back pain have not helped. She testified that surgery has not been recommended for her back pain. The claimant also testified to having gastrointestinal symptoms. She testified that she takes medication and is on a special diet, but this has not helped her symptoms. Additionally, the claimant testified that she receives treatment for her depression and anxiety including medication and counseling. The claimant testified that she does not feel like her psychotropic medication helps her.

[TR 34].

However, subjective complaints must be corroborated, at least in part, by objective medical evidence. *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991). ALJs have broad discretion when making credibility determinations because they must also weigh and resolve conflicts in the evidence. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). It is appropriate for an ALJ to discredit a plaintiff's subjective complaints due to contradictory medical reports or daily activities. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991).

> In this case, the claimant's perception of their own pain and limitations she states she experienced with the medical impairments, alone, does not satisfy the analysis required by SSR 16-3p. If one solely relied on the claimant's own perception of functional ability, there would be no need for a disability determination. The disability evaluation covers the consistency of the entire subjective and objective record. Based on the full evaluation, I find that the medically determinable impairments cannot reasonably be expected to produce the symptoms to the degree alleged by the claimant after evaluating all of the subjective and objective evidence of record.

> Despite the claimant's alleged symptoms, she completes many activities of daily living. The claimant testified that she drives when needed. In her function report, the claimant indicated that she handles her own personal care. Additionally, she noted caring for three young children, chores, helping with homework, preparing meals, and shopping in stores. Ex. 6E.

> To prevent the claimant from exacerbating the symptoms from her depression, anxiety, and PTSD, the undersigned finds that she has the ability to understand, remember, and carry out short and simple tasks and instructions. Further, she should have occasional contact with the public, co-workers, and supervisors. Work activity should be routine and repetitive. Finally, the claimant can ask simple questions or ask for help.

> Overall, the evidence does not support that the claimant's alleged symptoms or alleged loss of functioning. The claimant reported pain from arthritis and lumbar degenerative disc disease. While she had some instances of positive straight leg raise tests and a decreased lumbar range of motion, imaging showed only mild findings. Additionally, the claimant had otherwise normal examination findings including a normal gait, intact sensation, and normal muscle strength and tone. She treated her musculoskeletal conditions conservatively with medication, injections, and physical therapy. There is no evidence that surgery or other invasive treatment was recommended to treat these conditions. Further, the claimant has a history of gastrointestinal conditions, but she had generally normal imaging and examination findings. The claimant treated her IBS and colitis with GERD conservatively with

MEMORANDUM OPINION AND ORDER - Page 23

medication. There is no evidence that invasive treatment was recommended to treat the claimant's gastrointestinal conditions. The claimant reported symptoms from her depression, anxiety, and PTSD. With conservative treatment including psychotropic medication and counseling, the claimant saw an improvement in her depression and anxiety. She even had a euthymic mood and worked to return to school.

Despite the claimant's alleged symptoms, she completes many activities of daily living. The claimant testified that she drives when needed. In her function report, the claimant indicated that she handles her own personal care. Additionally, she noted caring for three young children, getting them up and ready for school each day. She reported running errands, doing household chores, helping with homework, preparing meals, and shopping in stores. Ex. 6E.

[TR 35-36].  The ALJ's Decision thoroughly reviewed Plaintiff's medical records, the diagnoses of her doctors, her related conservative treatment, the diagnostic tests, and imaging studies, and the inconsistencies between her subjective complaints and the objective medical evidence (which did not support the severity of her alleged symptoms).  The ALJ ultimately determined that "the medically determinable impairments cannot reasonably be expected to produce the symptoms to the degree alleged by the claimant after evaluating all of the subjective and objective evidence of record" [TR 35].

The ALJ properly considered Plaintiff's symptoms under SSR 16-3p, and remand is not required on this issue.  Although not in a formalistic fashion, the ALJ's decision shows that he properly considered the record as a whole, and it is sufficiently specific to show that the regulatory factors were considered.  *See Prince*, 418 F. Supp. 2d at 871; *see also Lopez v. Astrue*, 854 F. Supp. 2d 415, 424-25 (N.D. Tex. 2012) (finding that the ALJ properly evaluated the plaintiff's credibility by expressly acknowledging that he "experienced some level of pain and functional loss, but concluded that [the] plaintiff's subjective complaints of pain were out of proportion to the objective medical evidence").  Moreover, to reiterate, the ALJ's evaluation of the credibility of subjective complaints is entitled to judicial deference.  *See Carrier*, 944 F.2d at 247. Because there

is substantial evidence to support the ALJ's analysis of Plaintiff's subjective symptoms, remand is not required on this issue. *See Falco*, 27 F.3d at 164; *Giles v. Astrue*, 433 F. App'x 241, 249 (5th Cir. 2011) (finding ALJ's analysis of plaintiff's subjective complaints supported by his discussion of medical records and opinions).

## CONCLUSION

For the foregoing reasons, the Court finds the Commissioner's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

**SIGNED this 29th day of September, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE